The first case on calendar for argument is Lopez-Guzman v. Sessions. Will counsel for appellate please approach and proceed? Good morning. Good morning. May it please the court, my name is Sylvia Sparza and I'm the attorney for the petitioner, Mr. Lopez-Guzman. Counsel, you'll probably have to speak up just a little bit. Okay, sorry about that. Okay, so this court should remand for further proceedings because both the IJ and the Board of Immigration Appeals use the incorrect standard in deciding the withholding of removal case. The correct standard is in Barajas-Romero v. Lynch, where they held that withholding of removal only requires that the persecution be based on a reason rather than the higher standard of a central reason. In this particular case, one of the reasons was that Mr. Lopez-Guzman was being persecuted because of his religious tattoos. Now, is he being persecuted on account of religion? That's a separate argument, yes, Judge. Okay, so are you arguing that he's being persecuted on account of his religion or are you arguing that he's being persecuted on account of religious tattoos? We have two separate arguments. One of them would be the particular social group that was Honduran individuals that had religious tattoos that were perceived to be gang-related and then also the religious persecution. Okay, which one do you want to start with? We can start with the religious persecution. Before you do that, counsel, which argument was made before the board? Were both of them made before the board? I think so. There was more concentration, obviously, on the particular social group. The immigration judge kind of dismissed the religious persecution. I wasn't the attorney for that case before with the immigration judge, and with the Board of Immigration Appeals, the BIA kind of just dismissed also the religious aspect of the claim. All right, after you answer Judge Bybee's question, then, I would like to explore that a little more. Okay, so in terms of the religious persecution, Mr. Lopez Guzman had some religious tattoos, the Virgin Mary, praying hands, a rosary, and he discussed that he had gotten these tattoos because of his Catholic identity and because he venerated the Virgin Mary. And so he was being singled out by the gangs because of his religious tattoos. He describes an incident in his individual hearing where one of the Mara gang members said, oh, you know, you had the rose. But persecution by a gang is not grounds for withholding, is it? It's not persecution by the government? Is there any evidence that Catholics are being persecuted in El Salvador? Well, we're not saying that the Catholics that he's being persecuted. It's the fact that he was being singled out and targeted because of these religious tattoos by the gangs. Right, but if you're going to focus on religion, then you've got to tell us that he's being persecuted because he's Catholic. Now, he may not be Catholic, but if he had a tattoo of the Virgin of Guadalupe, then somebody might perceive him to be Catholic. But is he being persecuted because he is Catholic? Well, in part, yes. And who is he being persecuted by? Both the gangs and the police. The police are persecuting him because he's Catholic? Well, they're persecuting him because of the religious tattoos that he has. Okay, but if the tattoos or symbols, as you contend, are gang symbols, then that's your particular social group argument. I want to know why the police are persecuting him for being Catholic. Well, they're persecuting him because of his religious tattoos that are perceived to be gang-related. Okay, then that really has nothing to do with being Catholic, does it? Well, we would argue, Judge, that it does have something to do because he should be able to wear these tattoos openly in public without hiding them because it's central to his identity as a Catholic. He had mentioned that he got the tattoos because he was Catholic, because he reveres the Virgin Mary, and therefore, with that aspect,  But if the police are persecuting him because they think that they are gang-related, they're not persecuting him because he is Catholic. What part of the record actually indicates that he was, in fact, persecuted by the government? I'm not sure if I found that. Yeah, it does say that he testified that every time he was arrested by the police, that they would point to those religious tattoos. In his asylum application, he also indicated that that was the reason that he was being persecuted. But I thought the record indicated that there were no issues, really, with regards to him being mistreated by the government officials. Was there? Well, he was arrested on several occasions, and he indicated that he actually went to jail, and he wasn't released until his grandparents came to release him. And that was because of his tattoos? Yes, he said that that's the reason that he was being targeted. Counselor, could you point us specifically in the record to where we may go to confirm that? Okay, yes. Let's see here. I don't want you to use your time up. Right, and I know that in the record at page 107, it says that police detained him on three separate occasions. But you said they pointed to his tattoos. Where is that? I mean, the government or the attorney asked him, I guess, why were you singled out, and he said, because of my tattoos. Yeah, that's line 13 on page 107. But I don't see any reference there to religion or him being Catholic. Well, the tattoos that he has are religious. Oh, I understand that they're religious. But if, as he says, they're an indication of gang affiliation, then the police might be picking him up because they suspect him of being a gang member. But that's not persecuting him because he's Catholic. Well, our position is that he's being persecuted because of these religious tattoos, and therefore it's religious persecution because he can't openly wear these religious tattoos. He had to hide them. He had some testimony about how he couldn't find work. He had to go hide. He had to wear long sleeves. He should be able to wear these tattoos openly in public. Do you have any evidence in this record that Catholics are being persecuted by the police in El Salvador? No, not in that respect. Why don't we go to the gang? I think you should address Judge Rollinson's question. Well, I was going to ask you, first of all, a follow-up question on page 107. At line 5, sorry, line 3, he said, the police detained me several times. Question, for what reasons? Because they picked me up thinking I was a gang member, too. And he said they looked at his tattoos to see he was a gang member. That seems to run counter to your argument that it was because of his religion. Religious tattoos is what I was saying. But he linked it to gang membership. Well, also on page 107, it says, why do you think these people are doing this? And he said, just because of my tattoos. So he has religious tattoos. Which, according to your client, is evidence of gang affiliation. He says that's what the gangs have taken it for, that's what the police have taken it for. So that has nothing to do with being Catholic. Well, it has something to do with being Catholic, just because he's wearing religious tattoos. He's getting these tattoos because he believes in the Virgin Mary. But he could be Jehovah's Witness for all that we know, right? He might just have tattoos. Having Catholic tattoos doesn't mean that you're Catholic. There was testimony about that. They asked him, what do these tattoos represent to you? And he said, because I'm Catholic. But there's no evidence, counsel, as you've admitted. There is no evidence in this record that he is being persecuted on account of his religion. Not because he's Catholic. I understand and I agree with that. That suggests that you might be better off, counsel, going to your argument about gang affiliation as a particular social group. I think that it does go to the fact that he has these religious tattoos and they're inhibiting his religious expression of these tattoos, his expression of being Catholic. I mean, I am not sure why the court is saying that he is not being persecuted because of that. He has... But there's no evidence in the record to that effect. Well, there is, right? He testified in his asylum application. Okay, can I move on to the particular social group? So the particular social group were Honduran individuals that were tattooed with religious tattoos that are perceived to be gang members. And so in that particular situation, we feel that it has met the elements of immutability and particularity and the social distinction test. And so immutability would go to his identity as Catholic. His religious tattoos, the particularity would be that the boundaries of being religious tattoos, not just regular tattoos, and the social distinction would be that you could inspect. I know that the board had talked about that it doesn't have to be ocular visibility, but in this particular situation it helps that you can just inspect him and see that he is socially distinct and you can see that they're religious tattoos. The other argument we'd like to raise is that the board also did not address the fact that he could be tortured because of these perceived gang tattoos, and the country condition indicates that there is evidence of that. And the two cases that support that idea would be Cole v. Holder, which talks about that the board should evaluate all of the torture that goes on with individuals like Mr. Lopez-Guzman and also Andrade v. Lynch, that had said that not just any tattoos are going to be sufficient for cat protection, but also that there's going to be required to look at other tattoos such as these that are similar to gang tattoos. I'm going to reserve the rest of my time for it. Could you stop the clock, please? I just wanted to ask you, when you come back up, will you tell us where in the record we may go to confirm what arguments were made before the agency, whether the religious tattoos argument was made before the agency, and if so, where?  We'll hear from the government. Thank you. Thank you. May it please the Court, my name is Colette Winston. I represent the U.S. Attorney General. There are three issues today before this Court on this case. First, past persecution, whether Mr. Lopez-Guzman suffered past persecution, whether it rises to the extreme level of persecution. Two, whether he was able to show on this record that he has a clear probability of future persecution on account of a protected ground. And three, whether he established that it is more likely than not that he will be tortured upon his return to Honduras under the Convention Against Torture of Cat. The answer to all three of those issues is no. If I could just go over for 30 seconds a brief synopsis of the facts in this case. The petitioner was born in 1988. He entered illegally in 2006 when he was 18 years old. In 2008, he was convicted in Utah for possession of a controlled substance. While in prison in the United States, he received many tattoos. Two of them have some religious connection possibly. One is on his chest, and it's praying hands. And the second one is the Virgin of Guadalupe, and that's on his shoulder. Counsel, do you agree with opposing counsel that the issue regarding religious tattoos was raised before the agency? The issue was not squarely raised before the agency. Although in his asylum application on page 166 of the record, he did mention that he has religious tattoos. So it was part of the record before the agency. And when the immigration judge, the IJ, referred to the tattoos, he said, quote, he never made mention in his testimony of any problem that he experienced in Honduras due to his religion, Catholicism. He did not impress the court as a particularly religious person or that he would hold himself out as a religious person. Would it be fair to say that the issue was at least raised sufficiently for the immigration judge to comment on it? Yes, because he did talk about his tattoos. He told the immigration judge at his hearing where the tattoos were located and what the tattoos were made of, including tattoos that were not religious as well. So the immigration judge, in looking at whether he had a clear probability of persecution on account of a protected ground, said that Catholicism was not one of the protected grounds here. And he also said that he did not show sufficiently that he was part of a particular social group, not a cognizable social group. Well, do you agree that having religious tattoos would be an expression of one's religion? Would that be fair to say? It could be. It could be an expression of one's religion. It could be an expression of membership in a rival gang. And here there was only one statement at the hearing where the petitioner said that the gang member was asking him whether the tattoos were a symbol of a rival gang. But they were really, the gang members were targeting, the nexus here is that the gang members were targeting this petitioner because they wanted to recruit him. And there's a long line of cases, Santos Lemos, Artiaga, Enriquez-Rivas, just a really long line of both published and unpublished cases that say that recruitment is not sufficient to show that it's on account of a protected ground. And here there's two protected grounds. He did check off on his asylum application religion as one of the protected grounds and particular social group. So if the facts were different such that, going back to Judge Bybee's question, such that maybe the tattoo was in fact visible and the government in fact had persecuted him because of that, that would be a different set of facts, you would agree? Yes, that is not the set of facts before the court. Here the police in Honduras arrested him because they felt he was a gang member, not because he was Catholic or because his tattoos showed a possibility that he would be Catholic. It's a Catholic country. And they didn't target him for his Catholicism. They were doing their job. They thought he was a gang member and he even said at his hearing that he was asked, did the police mistreat you in any way on page 108? And he answered no. And he explained later in his testimony on page 128 that he was detained by the police in Honduras so they could see if he was a gang member, quote, not to be violent with me or to hurt me. So their concern was that he was a gang member. Their concern was not that he was Catholic or that his tattoos showed the possibility or the perception that he was Catholic. Counsel, what evidence in the record is there to support the notion that religious tattoos are a sign of gang affiliation in Honduras? There is really not enough evidence to compel a contrary conclusion. I'm just asking what evidence there is at all. In his testimony, he said that he had on his chest praying hands and a rosary. But is there any evidence from anybody that a rosary and praying hands tattoo is affiliated with one or more of these gangs? The only evidence is when he said he was approached by a gang member because he thought he was a violent gang member. Could that have been because he was tattooed and not because they were religious tattoos? Yes, it could have been. Would that also be consistent with the way that the police treated him, that because he was tattooed that they suspected he might be gang affiliated without knowing which gang it might be? Yes, Your Honor. I mean, and in fact, yes. Because we have two different gangs that he identified here, the Maras and the MS-13, is that correct? And we don't have any evidence that either of these tattoos was particularly affiliated with either of the gangs. So he might have been recruited by both gangs. That is, neither gang sort of suspected that he was from the opposite gang. Neither gang said, oh, this guy's clearly affiliated with us. Right, but the gangs approached him for recruitment and in his own words, because he was young, he was male, and he was poor. So those had nothing to do with tattoos. Possibly the tattoos were, you know, a concern for the gang member who approached him. They wanted to make sure he wasn't a member of a rival gang, and the police wanted to make sure he wasn't a gang member at all. He claimed he was not a gang member, a former gang member or a president. There's no evidence in the record, then, that having a tattoo of the Virgin of Guadalupe is particularly affiliated with MS-13 or with the Maras? Correct. Okay. Correct. It could be anything. And this is why the record... It's the petitioner who has the burden of proof here, and that's really the most important thing to focus on. And here in this record, he did not meet his burden of proof. He did not attach articles about religious tattoos. He did not, you know, testify, really, as to his religious tattoos. He did say what his tattoos are. He had a marijuana leaf. He had the words Maria on his fingers. He did make that, present that to the immigration judge, but he never really clearly made any connection. And the board expressed that. The board said that he had not articulated a particular social group to the immigration judge, and that's on page 3. The board went on to say, however, even if the putative group were properly before us, the applicant has not established that the group is cognizable, and went on to say that it was not overbroad. It lacked the requisite particularity to be a particular social group. So before the board, the social group was articulated. Before the immigration judge, it was not. Does it matter, though, if the board addressed the issue is sufficiently exhausted for us to look at it? No, it does not matter. You're correct, Your Honor. It does not matter. But to Judge Mendoza's question, it wasn't fully fleshed out before the immigration judge. But the immigration judge did refer to the possibility that religion would be one of the protected grounds, but said that this petitioner did not meet his burden of proof on that. And the issue is really whether substantial evidence supports a contrary conclusion in this record. And there's no evidence in the record to show a clear probability of future persecution on account of any protected ground. So if... You know, in particular, the social distinction aspect of particular social group makes this not a cognizable particular social group. There was nothing in the record to show that the Honduran government, the Honduran society, which is where you have to place your focus, viewed individuals with tattoos such as the tattoos that this petitioner had to be particularly... or to be part of a particular social group. All right. Thank you, counsel. Thank you. Rebuttal. Counsel, the government has agreed that the issue of religion was sufficiently exhausted, so you may use your time to address whatever you'd like. Okay. Yes. Just to, I guess, address the particular social group issue. Again, the Ninth Circuit has not addressed this specific issue. They've only talked in Arteaga v. Mukasey. They talked about former gang membership and former gangs, and they talk about gang tattoos and not religious tattoos, so we think that that is a distinction also. There was a huge policy concern about giving gang members or former gang members protection under asylum, and so here this case is different because we're talking about religious tattoos, we're talking about people who are not gang members, who've never been gang members, and therefore there's that distinction. And I don't think it's that simple to say, okay, Arteaga v. Mukasey has already said gang tattoos is not going to be a protected ground. This is something a little bit different than that case. Also, what was not addressed either by the IJ or the BIA was the fact that gang members or members that have gang tattoos or are perceived to have gang tattoos are routinely tortured, and this was recognized in Cole v. Holder and also in Andrade v. Lynch that said that if you have conspicuous tattoos or tattoos that are affiliated with the gangs, that the BIA or the IJ should look at evidence to see if the individual is at risk for torture, and that wasn't done in this particular case, and that's already been recognized on point from Honduras, individuals who have gang tattoos or are perceived to have gang tattoos. All right, counsel, we understand your argument. You've exceeded your time. Thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bybee, Mendoza